## GENERAL CRUDE OIL CO. v. SCOFIELD, Collector of Internal Revenue.

### No. 25.

District Court, W. D. Texas, Austin Division.

Feb. 1, 1940.

Andrews, Kelley, Kurth & Campbell, of Houston, Tex., for plaintiff.

W. R. Smith, Jr., U. S. Atty., of San Antonio, Tex., for defendant.

McMILLAN, District Judge.

The Court deeming the facts stipulated herein by the parties as proven adopts the same as a part of the Court's special findings of fact as follows:

I. Plaintiff is a corporation duly organized and existing under and by virtue of the laws of the State of Delaware. Prior to 1934 it was the Cranfill-Reynolds Company.

The defendant resides in the City of Austin, Travis County, Texas.

II. This is a suit to recover excise taxes paid by plaintiff to defendant in purported application of the Federal statute imposing a tax on all transportation of oil by pipe line. Section 731 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 636. The movements of oil taxed occurred during the years 1933, 1934 and 1935. Recovery is sought of "original" taxes (i.e., taxes paid voluntarily and monthly by plaintiff) for only the years 1934 and 1935 (recovery of such original taxes paid for oil moved in 1933 is not sought herein because recovery thereof is barred by limitations); and recovery is sought of "additional" taxes assessed and paid for oil moved in 1933 as well as in 1934 and 1935.

III. Prior to 1933 plaintiff purchased and it now owns certain mineral leases in Fisher County, Texas, on which there are, and during the years under consideration were, about 46 producing oil wells. During these years, and prior thereto, plaintiff leased another tract of approximately 62 acres centrally located with respect to its wells, and erected and maintained thereon five storage tanks having a total capacity of 200,000 barrels. In February, 1933, these tanks were connected with plaintiff's wells by pipe lines through which oil has, since said time, moved from the wells to the tanks. This is the movement at issue here which was held taxable by the Commissioner of Internal Revenue. The pipe lines were constructed and owned by plaintiff and consisted of approximately five miles of two-inch pipe and four miles of four-inch pipe. With the exception of one well situated in a southerly direction from the tanks and connected

therewith by approximately 9,252 feet of two-inch pipe, the gathering system of plaintiff lies in a northerly direction from the tanks, the four-inch pipe serving as a trunk or main line with lateral two-inch pipe running therefrom to the separate wells. No wells belonging to persons other than the plaintiff are connected to or with the pipes or tanks.

IV. Prior to 1933 the only outlet for oil from plaintiff's wells to market was through gathering lines of the Humble Pipe Line Company whose lines extended directly to and were connected with the wells of plaintiff and the oil then produced was sold at the well.

V. On or about February 9, 1933, the Shell Pipe Line Corporation laid a pipe line from its trunk line to plaintiff's tanks, a distance of about five miles.

VI. Plaintiff, during the periods herein referred to, dealt only with crude oil in its natural state as it flowed from its wells.

VII. The oil was sold and delivered by plaintiff in its crude state, during 1933, 1934 and 1935, at plaintiff's tanks to Shell Petroleum Corporation and was piped away from the tanks by Shell Pipe Line Corporation. Shell Pipe Line Corporation paid a transportation tax on the movement of oil from the tanks to its destination.

VIII. During the years 1933, 1934 and 1935 there were produced by plaintiff's wells approximately 1,851,596 barrels of crude oil which moved into plaintiff's tanks and was delivered there into the pipe line of Shell Pipe Line Corporation for Shell Petroleum Corporation.

IX. Another network of pipes serving wells in the Fisher County fields is the gathering system of Humble Pipe Line Company. Prior to August 1, 1934, it promulgated and maintained a published tariff fixing the charge of its gathering service at ten cents per barrel. After August 1, 1934, it promulgated its published tariff fixing its gathering charge at 7½ cents per barrel. The Commissioner of Internal Revenue, during the periods under consideration, used the same basic rates during the same periods in computing and assessing the tax.

X. Plaintiff filed timely claims for refund for original excise taxes paid for the years 1934 and 1935 and the additional taxes assessed and paid for 1933, 1934 and 1935 on the same grounds set forth and alleged in the complaint. Said claims were considered and rejected by the Commissioner of Internal Revenue and this suit was commenced within two years from such rejection and is timely brought.

XI. If during the years 1933, 1934 and 1935 the Humble Pipe Line Company had continued to move the oil produced from plaintiff's wells through the Humble Pipe Line Company's gathering system to the Humble Pipe Line Company's pipe line at Hawley, Texas, said company would have charged their published tariff rates for gathering and transporting the oil and such rates would have been charged regardless of the distance the oil was transported.

And makes the following additional findings of fact:

XII. During the years 1933, 1934 and 1935 the Atlantic Pipe Line Company, the Magnolia Pipe Line Company and the Texas Pipe Line Company promulgated and maintained substantially the same tariff as the Humble Pipe Line Company fixing the charge of their gathering service for oil fields in the West Texas and Central West Texas areas.

XIII. The production of the oil in question was complete when it was placed in the flow tanks in the vicinity of the wells.

XIV. The transportation of the oil from the flow tanks was toward market and the tanks into which the same was piped were merely incidental to its journey to market.

XV. Plaintiff was obligated under contract to sell its oil to Shell Petroleum Company and the oil was placed in the storage tanks for the convenience of the purchaser and remained there only temporarily until the latter company would move it further on its way to market.

XVI. The pipe lines of plaintiff were lines between the wells and the market.

XVII. The movements taxed were substantially similar to movements which pipe line carriers usually undertake and perform for hire.

XVIII. The movements taxed were not incidental to the production of oil and were movements toward market, which was located at the plaintiff's storage tanks where the oil was sold.

## Conclusions of Law.

I. The movements of the oil in question are taxable under the provisions of Section 731(a) of the Revenue Act of 1932.

II. The basis for tax purposes which was determined by the Commissioner of Internal Revenue, to wit, a charge of ten cents (10¢) per barrel prior to August 1, 1934, and seven and one-half cents (7½¢) per barrel on and after said date, was a fair charge for the services performed by plaintiff for itself in transporting its own oil and was determined from actual bona fide rates and tariffs of other pipe lines for like services.

III. The Commissioner of Internal Revenue was correct in using as a basis in assessing plaintiff the tax on a fair charge for transportation of ten cents (10¢) per barrel prior to August 1, 1934, and seven and one-half cents (7½¢) per barrel on and after August 1, 1934.

IV. The assessment of taxes made by the Commissioner of Internal Revenue out of which this action arose is in all things correct.

V. Judgment shall be entered for the defendant that plaintiff take nothing by reason of this suit.